**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

|  |  |
|---|---|
| **WEST AMERICAN INSURANCE COMPANY** ) | |
| ) | |
| **and** ) | |
| ) | |
| **THE OHIO CASUALTY INSURANCE** ) | |
| **COMPANY** ) | |
| ) | |
| **Plaintiffs** ) | |
| **v.** ) | |
| ) | |
| **PEAK CONSTRUCTION, INC.** ) | |
| ) | |
| **Serve:**   Steven J. Peak ) | **CIVIL ACTION NO.:**  3:18-cv-667-CHB |
| 7611 Glaser Road ) | |
| Louisville, Kentucky 40228 ) | |
| **and** ) | |
| ) | |
| **ST. FRANCIS SCHOOL, INC.** ) | |
| ) | |
| **Serve:**   Alexandra S. Thurstone ) | |
| 233 W. Broadway ) | |
| Louisville, Kentucky 40202 ) | |
| **and** ) | |
| ) | |
| **BTM ENGINEERING, INC.** ) | |
| ) | |
| **Serve:**   Michael J. Smith ) | |
| 3001 Taylor Springs Drive ) | |
| Louisville, Kentucky 40220 ) | |
| **and** ) | |
| ) | |
| **COMMONWEALTH ROOFING** ) | |
| **CORPORATION** ) | |
| ) | |
| **Serve:**   Michael Sasse ) | |
| 1449 Hugh Avenue ) | |
| Louisville, Kentucky 40213 ) | |
| **and** ) | |
| ) | |
| ) | |
| ) | |

**DURO-LAST, INC.**

**Serve:**  C T Corporation System
          306 W. Main Street, Suite 512
          Frankfort, Kentucky 40601

**and**

**(FER) STUDIO, LLP**

**Serve:**  (fer) Studio, LLP
          1159 E. Hyde Park Boulevard
          Inglewood, California 90302

**and**

**DOUGLAS V. PIERSON**

**Serve:**  Douglas V. Pierson
          125 E. Parrish Street, Suite 200
          Durham, North Carolina 27701

**and**

**LOUISVILLE PANELS, LLC d/b/a
FISCHERSIPS**

**Serve:**  Irina Morozova
          1844 Northwestern Parkway
          Louisville, Kentucky 40203

**and**

**HUSSUNG MECHANICAL CONTRACTORS,
INC.**

**Serve:**  David L. Hussung
          6913 Enterprise Drive, Suite B
          Louisville, Kentucky 40214

**and**

**K. NORMAN BERRY ASSOCIATES,
ARCHITECTS, PLLC d/b/a K. NORMAN
BERRY ASSOCIATES**

**Serve:**  Kathy Tredway
          815 W. Market Street, Suite 502

|                                          |     |
|------------------------------------------|-----|
|    Louisville, Kentucky 40202 | )   |
| **and**                                  | )   |
|                                          | )   |
| **T.C. PETERS CONSTRUCTION CO.**         | )   |
|                                          | )   |
| **Serve:**  Timothy C. Peters  | )   |
|       2005 Longest Avenue | )   |
|       Louisville, Kentucky 40204 | )   |
|                                          | )   |
|       **Defendants** | )   |

_____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, West American Insurance Company ("West American") and The Ohio Casualty Insurance Company ("Ohio Casualty") (collectively, "Plaintiffs"), by counsel, for their Complaint, state as follows:

## NATURE OF ACTION

1. This is an action pursuant to 28 U.S.C. § 2201, *et seq.* and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration that Policy Number BKW 50649654, issued by West American (the "General Policy") and Policy Number USO 50649654 (the "Umbrella Policy") (collectively, the "Policies"), do not afford any insurance coverage for the claims against Peak Construction, Inc. ("Peak Construction") arising out of the construction of the roof of the St. Francis School, Inc.'s ("St. Francis") gymnasium located at 11000 W. Highway 42, Goshen, Kentucky 40026 (the "Project").

## THE PARTIES

2. Plaintiff West American is an Indiana insurance corporation with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116. For purposes of 28 U.S.C. § 1332, West American is a citizen of Indiana and Massachusetts.

3

3.      Plaintiff Ohio Casualty is a New Hampshire corporation with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.  For purposes of 28 U.S.C. § 1332, Ohio Casualty is a citizen of New Hampshire and Massachusetts.

4.      Defendant Peak Construction is a Kentucky corporation with its principal place of business located at 7611 Glaser Road, Louisville, Kentucky 40228, and may be served through its registered agent, Steven J. Peak, at 7611 Glaser Road, Louisville, Kentucky 40228.  For purposes of 28 U.S.C. § 1332, Peak Construction is a citizen of Kentucky.

5.      Defendant St. Francis is a Kentucky non-profit corporation with its principal place of business at 233 West Broadway, Louisville, Kentucky 40202, and may be served through its registered agent, Alexandra S. Thurstone, at 233 West Broadway, Louisville, Kentucky 40202. For purposes of 28 U.S.C. § 1332, St. Francis is a citizen of Kentucky.

6.      Defendant BTM Engineering, Inc. ("BTM") is a Kentucky corporation with its principal place of business at 3001 Taylor Springs Drive, Louisville, Kentucky 40220, and may be served through its registered agent, Michael J. Smith, at 3001 Taylor Springs Drive, Louisville, Kentucky 40220.  For purposes of 28 U.S.C. § 1332, BTM is a citizen of Kentucky.

7.      Defendant Commonwealth Roofing Corporation ("Commonwealth Roofing") is a Kentucky corporation with its principal place of business at 1449 Hugh Avenue, Louisville, Kentucky 40213, and may be served through its registered agent, Michael Sasse, at 1449 Hugh Avenue, Louisville, Kentucky 40213.  For purpose of 28 U.S.C. § 1332, Commonwealth Roofing is a citizen of Kentucky.

8.      Defendant Duro-Last, Inc. ("Duro-Last") is a Michigan corporation authorized to do business in Kentucky with its principal place of business located at 525 Morley Drive, Saginaw, Michigan, 48601, and may be served through its registered agent, CT Corporation

4

System, at 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.  For purposes of 28 U.S.C. § 1332, Duro-Last is a citizen of Michigan.

9.      Upon information and belief, Defendant (fer) Studio, LLP ("Studio") is a California limited liability partnership with its principal place of business located at 1159 E. Hyde Park Boulevard, Inglewood, California 90302, and may be served through its registered agent, Christopher Mercier, at 1159 E. Hyde Park Boulevard, Inglewood, California 90302. Upon information and belief, for purposes of 28 U.S.C. § 1332, Studio is a citizen of California.

10.     Upon information and belief, Defendant Douglas V. Pierson ("Pierson") is an architect who worked for Studio on the Project.  Upon information and belief, Pierson is a citizen of North Carolina and resides at 125 E. Parrish Street, Suite 200, Durham, North Carolina 27701.

11.     Defendant Louisville Panels, LLC d/b/a FischerSIPS ("FischerSIPS") is a Kentucky limited liability company with its principal place of business located at 1844 Northwestern Parkway, Louisville, Kentucky 40203, and may be served through its registered agent, Irina Morozova, at 1844 Northwestern Parkway, Louisville, Kentucky 40203.   Upon information and belief, for purposes of 28 U.S.C. § 1332, FischerSIPS is a citizen of Kentucky.

12.     Defendant Hussung Mechanical Contractors, Inc. ("Hussung Mechanical") is a Kentucky corporation with its principal place of business located at 6913 Enterprise Drive, Suite B, Louisville, Kentucky 40214, and may be served through its registered agent, David L. Hussung, at 6913 Enterprise Drive, Suite B, Louisville, Kentucky 40214.  For purpose of 28 U.S.C. § 1332, Hussung Mechanical is a citizen of Kentucky.

13.     Defendant K. Norman Berry Associates, Architects, PLLC d/b/a K. Norman Berry Associates ("K. Norman Berry") is a Kentucky professional limited liability company with its principal place of business located at 815 W. Market Street, Suite 502, Louisville, Kentucky

40202, and may be served through its registered agent, Kathy Tredway, at 815 W. Market Street, Louisville, Kentucky 40202.  Upon information and belief, for purposes of 28 U.S.C. § 1332, K. Norman Berry is a citizen of Kentucky.

14.     Defendant T.C. Peters Construction Co. ("T.C. Peters") is a Kentucky corporation with its principal place of business located at 2005 Longest Avenue, Louisville, Kentucky 40202, and may be served through its registered agent, Timothy C. Peters, at 2005 Longest Avenue, Louisville, Kentucky 40204.  For purposes of 28 U.S.C. § 1332, T.C. Peters is a citizen of Kentucky.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 2201, *et seq.* and Rule 57 of the Federal Rules of Civil Procedure.

16.     An actual, justiciable controversy exists regarding the existence and scope of insurance coverage, if any, available under the Policies for the claims asserted against Peak Construction arising out of the Project.

17.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the suit is between citizens of different states.

18.     Pursuant to 28 U.S.C. § 1391, venue is proper.

## FACTUAL BACKGROUND

### A.  The Insurance Policies

19.     West American issued Peak Construction the General Policy, which is a commercial general liability coverage policy that was effective March 15, 2015 to March 15, 2016, and renewed the following year.

20.    The General Policy provides certain coverage to Peak Construction, subject to its terms, limits, conditions and exclusions.  A complete and accurate copy of the General Policy is attached hereto as **Exhibit A** and is fully incorporated herein by reference under Fed. R. Civ. P. 10(c).

21.    The General Policy has commercial general liability limits of $1,000,000.00 per occurrence.

22.    The General Policy provides certain commercial general coverage to Peak Construction, pursuant to the following insuring agreement, which states in relevant part:

**SECTION 1 – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

*See* Exhibit A, CG 00010413, bates no. 000118, Commercial General Liability Coverage Form, § I(1)(a)-(b).

23.    The Commercial General Liability Coverage Form in the General Policy contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

* * * *

**j. Damage to Property**

"Property damage" to:

. . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed.

. . . .

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

8

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*See id.* § I(2)(j)-(m), bates no's. 000119-000122.

24.     The following definitions apply to the Commercial General Liability Coverage Form in the General Policy:

**SECTION V – DEFINITIONS**

. . . .

8. "Impaired property" means intangible property, other than "your product" or "your work" that cannot be used or is less useful because:

  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

16. "Products completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned…

. . . .

17. "Property damage" means:

9

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . . .

21. "Your Product":

a. Means:

(1) Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

. . . .

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

. . . .

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

*See id.* § V(8), (13), (16)-(17), (21)-(22), bates no's. 000131, 000133-000134.

25.     In addition to the General Policy, Ohio Casualty issued Peak Construction the Umbrella Policy, which is a commercial umbrella insurance policy that was effective March 15, 2015 to March 15, 2016, and renewed the following year.

26.     The Umbrella Policy is an excess liability policy that provides an additional $5,000,000.00 in coverage for each occurrence that exceeds the retained limit of $1,000,000.00 provided in the General Policy, subject to the terms, limits, conditions and exclusions of the Umbrella Policy.  A complete and accurate copy of the Umbrella Policy is attached hereto as **Exhibit B** and is fully incorporated herein by reference under Fed. R. Civ. P. 10(c).

27.     The Umbrella Policy provides certain excess liability coverage to Peak Construction, pursuant to the insuring agreement, which states in relevant part:

**I.  COVERAGE:**

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.  The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE.**

*See* Exhibit B, CU 60020697, bates no. 000305, Commercial Umbrella Coverage Form, § I.

28.     The Umbrella Policy contains the following exclusions:

**IV. Exclusions:**

This insurance does not apply to

\* \* \* \*

**E.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

F. "Property damage" to "your product" arising out of it or any part of it.

G. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "your product"

2. "your work"; or

3. "impaired property"

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*See id.* § IV(E)-(H), bates no's. 000307-000308.

29. The following definitions apply to the Umbrella Policy:

## V. DEFINITIONS

. . . .

E. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.  you have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

    1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

    2. your fulfilling the terms of the contract or agreement.

. . . .

**J.**  "Occurrence" means:

    1.  as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" also means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that involves:

        a.  "Property damage" to property that is not "your work", but is caused by "your work" regardless of whether the work is performed by you or on your behalf by a subcontractor; or

        b.  "Property damage" to "your work", but:

            (1) only if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor, and the "property damage" is included within the "products-completed operations hazard"; and

            (2) only to the extent that insurance is provided for such "property damage" by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

. . . .

**L.**  1. "Products-completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except:

    a.  Products that are still in your physical possession; or

    b.  Work that has not yet been completed or abandoned.

. . . .

**M.** "Property damage" means:

    1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    2.  loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

. . . .

**P.** "Your product" means:

    1.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.  you;

        b.  others trading under your name; or

        c.  a person or organization whose business or assets you have acquired; and . . . .

"Your product" includes:

    1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    2.  the providing of or failure to provide warnings or instructions.

. . . .

**Q.** "Your work" means:

    1.  work or operations performed by you or on your behalf; and

    2.  materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    2.  the providing of or failure to provide warnings or instructions.

*See id.* § V(E), (J), (L)-(M), (P)-(Q), and CU 65130710, Amendment of Occurrence Definition, bates no's. 000310, 000312-000314, 000336.

14

**B. The Underlying Lawsuit**

30.     On or about March 28, 2017, St. Francis commenced an action in Oldham County Circuit Court against Peak Construction, BTM, Commonwealth Roofing, Duro-Last, Christopher Mercier Studio (fer), LLC,[1] FischerSIPS, LLC,[2] Hussung Mechanical, K. Norman Berry, FischerSIPS, Pierson, and T.C. Peters (collectively, the "Underlying Defendants") seeking damages for the injuries it sustained as a result of the work performed on the Project.  That action is styled *St. Francis School, Inc. v. BTM Engineering, Inc., et al.*, Case No. 17-CI-00198 (Oldham Cir. Ct.) (the "Underlying Action").  A complete and accurate copy of the Complaint filed in the Underlying Action, without exhibits, is attached hereto as **Exhibit C**.

31.     The Complaint in the Underlying Action alleges that after the Project was completed in 2014, wind events in the fall of 2016 and winter of 2017 revealed problems with the gymnasium roof, which, as a result of the acts and omissions of the Underlying Defendants, have caused continuing and actual loss to St. Francis.  *See* Exhibit C.

32.     The Complaint in the Underlying Action further alleges that the Underlying Defendants are liable to St. Francis for the damage caused by the defectively performed work on the Project under theories of (1) breach of contract, (2) breach of warranty, (3) professional negligence, and (4) negligence. *See id.* ¶¶ 20-116.

**C. Peak Construction's Alleged Negligence**

33.     In 2014, Peak Construction replaced the gymnasium roofing assembly with a new assembly consisting of structural insulated panels ("SIPs") that were mechanically attached to the existing steel purlins, creating the inner part of the gymnasium's ceiling.

---

[1] Christopher Mercier Studio (fer), LLC has not been named in this lawsuit because in its Answer, Christopher Mercier Studio (fer), LLC avowed that the entity no longer existed and had been incorporated into (fer) Studio, LLC.

[2] FischerSIPS, LLC has not been named in this lawsuit because FischerSIPS is the successor-in-interest of FischerSIPS, LLC and FischerSIPS, LLC is no longer a functioning entity.

34.     The SIPs are composed of a layer of expanded polystyrene foam insulation between a top and bottom layer of oriented strand board and appear as shown in the graphic below.



35.     Proper installation of SIPs requires the panel joints to be sealed in such a manner that air cannot travel through them.

36.     Indeed, FischerSIPS, the manufacturer of the SIPs at issue, and the Structural Insulated Panel Association both require the panels and their joints to be sealed airtight.

37.     However, according to St. Francis's expert, Building Technology Consultants, Inc. ("BTC"), Peak Construction failed to properly seal the panel joints, resulting in large unsealed gaps between the panels. (BTC Expert Report, p. 12.)

38.     The gaps allowed warm, humid air from within the gymnasium to intrude through the joints into the roofing system where it came into contact with the underside of the roof membrane installed over top of the SIPs.  *Id.* at 15.

39.     Because the roof membrane acted as the gymnasium's roof's last barrier to outside conditions, it would have been close in temperature to the outside and thus would likely have been below the dew point of the indoor air in winter months. *Id.*

16

40.     Consequently, condensation of moisture formed within the roof assembly upon the gymnasium's warm, humid air contacting the underside of the roof membrane. *Id.*

41.     The continuous buildup of moisture saturated the SIPs' top layer of oriented strand board and compromised the holding capacity of the fasteners, fastening the roof membrane to the SIPs. *Id.* at 16.

42.     The wind events in 2016 and 2017 caused ballooning and fluttering of the roof membrane due to the fasteners backing out of the deteriorated oriental strand board.

43.      The ballooning and fluttering of the roof was likely exacerbated by the gaps between the SIP joints; had the joints been properly sealed to prevent air movement between the interior and the roofing assembly, the vacuum formed below the roof membrane would have prevented significant ballooning and fluttering. *Id.* at 15.

44.     When the roof membrane was removed to observe the condition of the SIPs, it was determined that the water damage pervaded the roof to such an extent that it could not be repaired, and in the fall of 2017, the roof was replaced by Buffalo Construction. *Id.*

45.     St. Francis claims that Peak Construction's negligent installation of the SIPs was a substantial or primary factor in the damage caused to its gymnasium's roof.

**D.  Crossclaims asserted by and against Peak Construction in the Underlying Lawsuit**

46.     On or about April 21, 2017, Studio and Pierson filed a Crossclaim Complaint in the Underlying Action seeking apportionment, contribution and/or indemnification from BTM, Commonwealth Roofing, Duro-Last, FischerSIPS, Hussung Mechanical, K. Norman Berry, Peak Construction, and T.C. Peters.  A complete and accurate copy of Studio's and Pierson's Answer and Crossclaim Complaint is attached hereto as **Exhibit D**.

17

47.     On or about April 28, 2017, Peak Construction filed a Crossclaim Complaint in the Underlying Action seeking apportionment, contribution and/or indemnification from BTM, Commonwealth Roofing, Studio, Pierson, Hussung Mechanical, K. Norman Berry, FischerSIPS, and T.C. Peters.  A complete and accurate copy of Peak Construction's Answer and Crossclaim Complaint is attached hereto as **Exhibit E**.

48.     On or about May 19, 2017, T.C. Peters filed a Crossclaim Complaint in the Underlying Action seeking apportionment and/or contribution from BTM, Commonwealth Roofing, Duro-Last, FischerSIPS, Hussung Mechanical, Studio, Pierson, K. Norman Berry, and Peak Construction.  A complete and accurate copy of T.C. Peter's Answer and Crossclaim Complaint is attached hereto as **Exhibit F**.

49.     On or about May 19, 2017, K. Norman Berry filed a Crossclaim Complaint in the Underlying Action seeking apportionment, contribution and/or indemnification from BTM, Commonwealth Roofing, Studio, Pierson, Duro-Last, FischerSIPS, Hussung Mechanical, Peak Construction, and T.C. Peters.  A complete and accurate copy of K. Norman Berry's Answer and Crossclaim Complaint is attached hereto as **Exhibit G**.

50.     In response to each of the Crossclaim Complaints asserted against Commonwealth Roofing, Commonwealth Roofing filed counterclaims asserting the claim of common law indemnity against Studio and Pierson, Peak Construction, T.C. Peters, and K. Norman Berry. A complete and accurate copy of Commonwealth Roofing's Answer and Counterclaim against Peak Construction is attached hereto as **Exhibit H**.

## COUNT I – DECLARATION THAT PEAK CONSTRUCTION IS NOT ENTITLED TO COVERAGE UNDER THE GENERAL POLICY FOR ANY CLAIM ARISING FROM THE WORK PERFORMED ON THE PROJECT

51.     Plaintiffs incorporate by reference paragraphs 1-50 as if fully set forth herein.

52.     Pursuant to the express and unambiguous terms of the General Policy, there is no insurance coverage under the General Policy for any of the claims asserted or damages sought in the Underlying Action.

53.     Peak Construction's negligent installation of the SIPs does not constitute an occurrence and therefore does not invoke coverage under the General Policy.

54.     Alternatively, multiple exclusions contained in the General Policy apply to bar coverage under the General Policy.

55.     Accordingly, West American is entitled to a declaratory judgment that it owes no duty to defend or indemnify Peak Construction in the Underlying Action, or for any claims or damages arising out of the work performed by Peak Construction at the Project.

56.     West American specifically reserves the right to rely on any further General Policy defenses that are applicable.

## COUNT II – DECLARATION THAT PEAK CONSTRUCTION IS NOT ENTITLED TO COVERAGE UNDER THE UMBRELLA POLICY FOR ANY CLAIM ARISING FROM THE WORK PERFORMED ON THE PROJECT

57.     Plaintiffs incorporate by reference paragraphs 1-56 as if fully set forth herein.

58.     Pursuant to the express and unambiguous terms of the Umbrella Policy, there is no insurance coverage under the Umbrella Policy for any of the claims asserted or damages sought in the Underlying Action.

59.     Peak Construction's negligent installation of the SIPs does not constitute an occurrence and therefore does not invoke coverage under the Umbrella Policy.

60.     Alternatively, multiple exclusions contained in the Umbrella Policy apply to bar coverage under the Umbrella Policy.

61.     The Umbrella Policy is an excess liability policy that does not provide coverage until the Retained Limit of the General Policy has been reached.

62.     Thus, coverage under the Umbrella Policy is not triggered until two conditions have been met: (1) coverage is found under the General Policy; and (2) the Retained Limit of the General Policy, *i.e.*, $1,000,000.00, has been exceeded.

63.     Upon this Court finding that there is no coverage under the General Policy, the Court should likewise find that there is no coverage under the Umbrella Policy.

64.     Consequently, Ohio Casualty is entitled to a declaratory judgment that it owes no duty to defend or indemnify Peak Construction in the Underlying Action, or for any claims or damages arising out of the work performed by Peak Construction at the Project.

65.     Ohio Casualty specifically reserves the right to rely on any further Umbrella Policy defenses that are applicable.

WHEREFORE, Plaintiffs, West American Insurance Company and Ohio Casualty Insurance Company, respectfully request the following:

A.     A declaration that West American does not owe a duty to defend or indemnify Peak Construction, or any other person or entity, in connection with the Underlying Action, any counterclaims or crossclaims filed therein, or for any other claims relating to Peak Construction's work on the Project because the General Policy does not afford coverage to Peak Construction or anyone else;

B.     A declaration that Ohio Casualty does not have a duty to defend or indemnify Peak Construction, or any other person or entity, in connection with the Underlying Action, any

counterclaims or crossclaims filed therein, or for any other claims relating to Peak Construction's work on the Project because the Umbrella Policy does not afford coverage to Peak Construction or anyone else;

C.      For its costs herein expended; and

D.      For any and all other relief to which Plaintiffs may appear entitled.

Respectfully Submitted,

/s/ Chadler Hardin
Douglas C. Ballantine
Chadler M. Hardin
STOLL KEENON OGDEN PLLC
500 West Jefferson, Suite 2000
Louisville, KY  40202
T: (502) 333-6000
F: (502) 333-6099
douglas.ballantine@skofirm.com
chad.hardin@skofirm.com

*Counsel for Plaintiffs*

501016.160263/1605275.1